## In re HAGGERTY.

(Supreme Court, Appellate Division, First Department.   November 13, 1908.)

1. TAXATION (§ 861*) — TRANSFER TAX—ESTATES SUBJECT TO TAX—VESTED ESTATES.

   Where an estate created by a will vested before the transfer tax statutes were enacted, no tax can be imposed thereon.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1676; Dec. Dig. § 861.*]

2. WILLS (§ 634*)—VESTED REMAINDERS—STATUTES—"VESTED ESTATE."

   Real Property Law (Laws 1896, p. 564, c. 547) § 30, provides that an estate is vested when there is a person in being having an immediate right to possession on the termination of all intermediate or precedent estates; and section 31 declares that the existence of an unexecuted power of appointment does not prevent the vesting of a future estate limited on default of execution of the power. Testator bequeathed a share of his estate in trust for S., one half absolutely and the other half for life, and in case no issue survived her to pay one-half of her share to her appointee by will, and in default of appointment to C., should she survive S. Both C. and S. survived testator. S. died without children, leaving C. surviving and a will by which she executed the power of appointment in favor of C. *Held*, that on testator's death, S. surviving and having no issue, the remainder in the half share of S. vested at once in C., subject to be divested by the birth of issue to S. or by the execution of the power.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1479, 1492; Dec. Dig. § 634.*]

   For other definitions, see Words and Phrases, vol. 8, pp. 7302–7303, 7827.]

3. POWERS (§ 41*)—EXECUTION—RENUNCIATION.

   Where C. took a vested estate in remainder as of testator's death in one-half of the share bequeathed to S., subject to be divested by the birth of issue to S. or by the execution of her power to dispose of such interest, and S. died without issue, leaving a will by which she executed the power in favor of C., the execution of the power took effect only on the death of S., so that C. was entitled to repudiate the appointment and claim the property exclusively under testator's will.

   [Ed. Note.—For other cases, see Powers, Dec. Dig. § 41.*]

   Houghton, J., dissenting.

Appeal from Order of Surrogate, New York County.

Application for the assessment of a transfer tax on property of the estate of Ogden Haggerty passing to one Clemence H. Crafts on the death of Anna K. Shaw.   From a surrogate's order, affirming an order subjecting such interest to a tax, the executors of Ogden Haggerty's estate appeal.   Reversed, and application denied.

Argued     before     INGRAHAM,     McLAUGHLIN,     CLARKE, HOUGHTON, and SCOTT, JJ.

George A. Strong, for appellants.

Thomas B. Casey, for respondent State Comptroller.

INGRAHAM, J.   Ogden Haggerty died in the city of New York on the 30th of August, 1875, leaving a last will and testament which was duly admitted to probate by the surrogate of the county of New York

on the 11th day of December, 1875. The testator gave to his executors in trust all his residuary estate, to divide the same into three equal shares, one of such shares to be for the benefit of his wife, and one for the benefit of each of his two daughters, Anna K. Shaw and Clemence H. Crafts. In respect to the share designed for the benefit of his daughter Anna K. Shaw, one-half of such share he gave to her absolutely, and the remaining one-half to his executors in trust to pay the income and profits thereof to his said daughter Anna K. Shaw during her life, and on her death to pay and transfer the principal of one-half of such share to her issue, "and in case no such issue shall survive her, then to pay and transfer the said last-mentioned one-half share to such person or persons as my said daughter Anna shall, by her last will, or instrument in the nature thereof, execute in the presence of at least two witnesses, direct or appoint, and in default of such will or appointment, then to pay and transfer the said last-mentioned one-half share to my said daughter Clemence H. Crafts, if she shall survive the said Anna, or in case she shall not survive the said Anna, then to the issue then living of the said Clemence." Both of the testator's daughters survived him. Anna K. Shaw had no children, and died without issue on the 17th of March, 1907, leaving her sister, Clemence H. Crafts, surviving.

I think it clear that upon the death of Ogden Haggerty, the testator, Anna K. Shaw surviving and having no issue, the remainder vested in Clemence H. Crafts, subject, however, to be divested by the birth of issue of Anna K. Shaw, or by the execution of the power to dispose of this interest in the estate. By section 30 of the real property law (chapter 547, p. 564, of the Laws of 1896), which is in substance a re-enactment of Rev. St. (1st Ed.) p. 723, pt. 2, c. 1, tit. 2, § 13, it is provided that:

"A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates."

Section 31 provides that:

"The existence of an unexecuted power of appointment does not prevent the vesting of a future estate, limited in default of the execution of the power."

Clemence H. Crafts was a person in being who would have an immediate right to the possession of the property on the determination of the precedent estate; and her interest was, therefore, a vested remainder. The existence of the power of appointment could have no effect upon this vesting. Section 31 of the real property law, before referred to, was a statement of the common law as it existed prior to its passage. Root v. Stuyvesant, 18 Wend. 257. In that case it is said:

"It appears to be well settled that until the execution of the power the remainders or limitations over take effect the same as if no such power existed, or as in case of default of execution of it. * * * The result of the authorities is that the power of appointment does not prevent the vesting of the estate limited in default of appointment. They are, of course, subject to be divested on the execution of the power."

See, also, Hawley v. James, 5 Paige, 318–467.

That under this provision of the real property law Clemence H. Crafts had a vested remainder is sustained by the authorities. See Knowlton v. Atkins, 134 N. Y. 313, 31 N. E. 914. In Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811, Andrews, C. J., said:

"Those entitled under this will as remaindermen took, not because the power of division was given to the trustees, but independently thereof, as primary devisees in remainder under the will. The class may be enlarged or diminished, or the rights of the issue of any child may be extinguished, by the extinction of such issue by death before the termination of the life estate; but this does not affect the question. The issue living are presumptively entitled in remainder, and during the life of the parent, they living, have a vested future estate in the parent's share."

The interest of Clemence H. Crafts being thus a vested remainder, subject to be divested by the birth of issue of Anna K. Shaw, or by the exercise of the power of appointment contained in the will, Anna K. Shaw died leaving a last will and testament by which she executed this power of appointment in favor of her sister, Clemence H. Crafts, who, prior to the execution of that power, had a vested remainder in the property. It is clear that the execution of that power only took effect upon the death of Anna K. Shaw. After the will of Mrs. Shaw was admitted to probate, Clemence H. Crafts, by a formal instrument in writing, duly verified, claimed the trust funds exclusively under the will of her father, Ogden Haggerty, and in no respect through the action of her said sister, and she refuses to take under the alleged appointment. It is settled that, when an estate is vested under a will made before the transfer tax statutes were enacted, no tax can be imposed. Matter of Pell, 171 N. Y. 48, 63 N. E. 789, 57 L. R. A. 540, 89 Am. St. Rep. 791; Matter of Lansing, 182 N. Y. 238, 74 N. E. 882. So, if Clemence H. Crafts took under the will of her father, her interest in the estate was not taxable; while, if she took under the power of appointment contained in the will of her sister, the transfer was taxable.

The question to be determined, therefore, is whether she received this estate under the will of Ogden Haggerty, admitted to probate in 1875, or under the will of her sister, which was admitted to probate on the 16th of May, 1907. In Matter of Lansing, supra, it was held, where a will provided that a testator's daughter should have the income from certain property during her life, through a trust created for her benefit which, by the same sentence which created the trust during her life, gave the property after her death to the testator's granddaughter, subject to the exercise of the power of appointment which was attempted to be exercised in favor of the person in whom was vested the remainder, that the—

"appointee under a power has the right of election, the same as a grantee under a deed. * * * He can accept the title tendered, or reject it, in his discretion. It cannot be forced upon him against his will. He cannot be compelled to receive additional evidence of title, when he does not want it and does not need it, because his title is perfect without it. His consent is necessary before the attempt to exercise the power becomes binding upon him, the same as consent is necessary in making a contract or agreement. Declining or refusing to take has the same effect as incapacity to take. * * * The title is not affected, but remains where it was before."

And, although in that case there was a strong dissent, that proposition does not seem to have been disputed; the dissent being based upon the contention that there was no valid waiver made by the remainderman, as she had made no binding election to take under the will of her grandfather. In this case Clemence H. Crafts has formally elected to take under the will of her father, and refused to accept the benefit of the provision made for her in the will of her sister; and we think the case is controlled by the Matter of Lansing, supra. As was said by Judge Vann in that case:

"Her rights were fixed by the will of her grandfather, and, unless changed pursuant to its provisions, her estate in expectancy would become an estate in possession upon the death of her mother. While the situation was subject to change under the power of appointment, no change was made. Although the power was exercised in form, her title was perfect without it, and she derived no benefit from it. The power was to 'dispose of the remainder,' and the remainder was not disposed of, but continued where it was. The attempt to execute the power was not effective, because it did nothing. The exercise of power which leaves everything as it was before is a mere form, with no substance."

Matter of Cooksey, 182 N. Y. 92, 74 N. E. 880, is clearly distinguishable, for, as said in Matter of Lansing, in speaking of that case:

"It therefore became necessary for the grandchildren to claim under the power of appointment as exercised by their mother, in order to come into possession of the largest sums mentioned at the ages named. Moreover, title to the remainder was to vest in them only upon the failure of the mother to appoint. If she exercised the power, they could take under that source only; for they could not take under the will of the grandfather, as Judge Haight shows in his opinion."

The distinction between the two cases is plain. In the Cooksey Case the power was exercised by changing the terms under which the appointees of the power could take, and thus the appointee must take under the exercise of the power, or not at all; while in the Lansing Case the exercise of the power made no difference as to the estate that the appointee of the power should take, but simply confirmed the provisions in the original will, so that the exercise of the power left everything as it was, and, as the court said in the Lansing Case, "it was a mere form with no substance."

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the application to tax the transfer denied.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). In the Matter of Lansing, 182 N. Y. 238, 74 N. E. 882, which is claimed to be controlling in appellant's brief, the devise was held not subject to transfer tax because it vested through the provisions of the primary will and could be defeated only through exercise of the power of appointment to the contrary. The power having been exercised in conformity with the devise as given by the former will, its exercise was treated as a nullity, because it passed no title. In the case at bar it seems to me no such situation exists. By the tenth clause of the will of Ogden Haggerty the trustees in

whom title was lodged, the property being personalty, were directed to hold one-half of the share of his estate given to the daughter Anna and pay the income to her during her life, and on her death pay over the principal to her issue, and in default of issue then—

"to pay and transfer the said last-mentioned one-half share to such person or persons as my said daughter Anna shall by her last will or instrument in the nature thereof, executed in the presence of at least two witnesses, direct or appoint, and in default of such will or appointment then to pay and transfer the said last-mentioned one-half share to my said daughter Clemence H. Crafts if she shall survive the said Anna, or in case she shall not survive the said Anna then to the issue then living of the said Clemence."

To my mind this language comes far short of an absolute bequest to the daughter Clemence, subject to be defeated by the exercise of the power of appointment given to the daughter Anna. No bequest is made at all, except upon default of appointment. The appointment having been made, it had the effect of passing title. The contingency of failing to exercise the power upon which the title of Clemence depended did not arise, for the power was actually exercised. It having been exercised by the daughter Anna, the title passed through such appointment, and not by virtue of the primary will.

It is no answer, it seems to me, in avoidance of the imposition of a transfer tax, to say that Clemence refuses to recognize title coming to her through the will of her sister Anna. Of course, any legatee can refuse to take a legacy, and thus avoid the transfer tax upon it. This is not what the appellant has done. She has simply said that she does not recognize title to the legacy as coming through the appointment made by her sister, because she gets title through the will of her father. She does not propose to wholly surrender the legacy, and if title in fact does come to her through the appointment made by her sister the legacy is subject to the transfer tax.

I think it does, and that the order of the surrogate was proper, and should be affirmed.